United States District Court
Southern District of Texas
**ENTERED**
August 06, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| JAMES FUCHS, JR., §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>AMAZON WEB SERVICES, INC., *et al.*, §<br>§<br>Defendant. §<br>§ | CIVIL ACTION NO. H-23-2031 |

**MEMORANDUM AND OPINION**

The plaintiff, James Fuchs, Jr., alleges that he was blinded by a light flash that arced from a welding torch on a construction site in Nashville, Tennessee . (Docket Entry No. 1-3). Fuchs sued Amazon Web Services, Inc. and Amazon.com Services LLC, which were constructing an Amazon facility on the site, and Turner Construction Company, which Amazon had hired to be the general contractor and to provide construction management services. Fuchs has nonsuited the Amazon entities. (Docket Entry No. 41). Turner has moved for summary judgment. (Docket Entry No. 24).

Turner's first ground for summary judgment is that because Fuchs does not know who was holding the welding torch that injured him, he cannot establish that the person was a Turner employee or subcontractor. (Docket Entry No. 24 at 5-6). Turner also argues that Fuchs cannot establish that Turner employees or subcontractors were working where and when Fuchs was injured. (*Id.*). Finally, Turner argues that Fuchs's blindness was not caused by the accident, but by chronic medical conditions. (*Id.* at 8–9).

Based on the pleadings, the motions and briefs, the record, and the applicable law, the court denies Turner's motion for summary judgment. The reasons for this ruling are set out below.

## I.    Background

The parties appear to agree that in February 2021, Fuchs was working at the Nashville Yards construction site as an employee or independent contractor of Nashville Machine Company. (Docket Entry No. 24 at 3).   Turner Construction Company was the general contractor for the Nashville Yards projects, and Nashville Machine Company was a Turner subcontractor. (*Id.*). Fuchs alleges that he was blinded when a welding arc flash burned his eyes. (*Id.* at 2). Fuchs has not regained his sight.  (*Id.* at 3). Before the incident, Fuchs could work without vision difficulties and without assistance; he cannot do that now. (*Id.*; Docket Entry No. 28 at 2-3).

Fuchs alleges that he went up to the penthouse level of the building under construction at the direction of a Turner employee. (Docket Entry No. 24-1 at 61:5–8). A welder was working on the penthouse floor, without barricades, warning signs, or watch personnel to notify other workers to avoid the area where the welding was taking place.  (Docket Entry No. 28 at 2). Fuchs testified that the person holding the welding torch was wearing regular clothes, without a vest, hard hat, or other apparel that might have named that person's employer.  (Docket Entry No. 24 at 5; 24-1 at 68:7–69:3). Fuchs asserts claims for negligence, vicarious liability, and negligent training. (Docket Entry No. 19). He has nonsuited his claims for gross negligence. (Docket Entry No. 28 at 21).

Turner responds by alleging that on the date of the incident, no Turner employees or subcontractors were scheduled to work on the penthouse level of the building where Fuchs was hurt. (Docket Entry No. 24 at 3). Turner claims that it "did not employ any welders on the project at all" and that welding was not necessary at that stage of the building construction.  (Docket Entry No. 41 at 5:2-7; 18:8-12). Turner alleges that it was not the only contractor onsite, but Turner has

not identified other contractors who might have been working on this project or on a nearby project at the same time.  (Docket Entry No. 24 at 5–6). Amazon has stated that it contracted directly with Turner, and Fuchs alleges that Turner was the managing contractor for the property at that time. (Docket Entry No. 28 at 15-16).

## II.    Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.'"  *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted).  "However[,] the movant 'need not negate the elements of the nonmovant's case.'"  *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court

must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

## III.   Analysis

### A.  Turner's Liability for the Welder

Turner asserts that the welder was not a Turner employee or subcontractor, but acknowledges that information about the welder is scant. The welder's identity is unknown. Turner asserts that on the date of the alleged incident, it did not employ any welders on the site and none of Turner's subcontractors were scheduled to perform any work at the penthouse level of the building. (Docket Entry No. 24 at 2, 8). A Turner employee testified that other general contractors were working in the building area where Fuchs was injured around the time of the incident. (Docket Entry No. 24-2 at ¶ 7).

Fuchs presents Amazon's responses in discovery as evidence that Turner was the only general contractor working in the building, or at least the only contractor authorized to work in the building, creating an inference that all the workers in that building would be either employees or subcontractors of Turner. (Docket Entry No. 28 at 15-16). Because "both parties have submitted

4

evidence of contradictory facts," the court resolves the contradictions in favor of the nonmovant, Fuchs. *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

Turner argues in the alternative that if the welder worked for one of Turner's subcontractors, Turner cannot be vicariously liable because the welder would have been working for an independent contractor, not an employee. (Docket Entry No. 24). Turner urges that Tennessee law, rather than Texas law, applies to this issue. (*Id.* at 4-5). Tennessee courts consider the following factors in determining whether a person is an independent contractor or an employee: (1) the right to control the conduct; (2) the right of termination; (3) the method of payment; (4) the freedom to select and hire helpers; (5) the furnishing of tools and equipment; (6) self-scheduling of work hours; (7) the freedom to offer services to other entities. *Wilson v. Thompson Constr. Co.*, 86 S.W.3d 536, 541 (Tenn. Ct. App. 2001). Texas courts use similar factors: (1) the independent nature of the contractor's business; (2) the obligation to supply necessary tools, supplies, and materials; (3) the right to control the progress of the work except as to final results; (4) the duration of the employment; and (5) the method of payment, whether by time or by the job. *Durbin v. Culberson Cnty.*, 132 S.W.3d 650, 658–59 (Tex. App.—El Paso 2004, no pet.).

Under the law of both states, the right to control work is the primary factor in distinguishing an employee from an independent contractor. *See, e.g.*, *Wilson*, 86 S.W.3d at 541 (Tenn. Ct. App. 2001); *Lindsey v. Trinity Communs., Inc.*, 275 S.W.3d 411, 419 (Tenn. 2009); *Ross v. Tex. One P'ship*, 796 S.W.2d 206, 210–11 (Tex. App.—Dallas 1990), writ denied per curiam, 806 S.W.2d 222 (Tex. 1991); *JLB Builders, LLC v. Hernandez*, 622 S.W.3d 860, 864-65 (Tex. 2021). The right to control work requires more than "a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations." *Mata v. Brooks Petroleum Co.*,

No. 02-CV-00075, 2003 WL 1922851, at *3 (Tex. App. Apr. 23, 2003). Showing the right to control requires evidence of "control[] the method of work or its operative details." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 608 (Tex. 2002).  An employee, as opposed to an independent contractor, is "not entirely free to do the work in his own way." *Mata*, 2003 WL 1922851, at *3. Turner could be liable if it exercised supervisory control over the construction work in the penthouse area where the welding torch arc allegedly hit Fuchs's face.

Turner presents the deposition of one of its employees as evidence that it "did not supervise the details of [any subcontractors'] work," because it "did not have any contractual right of control over any work performed by [subcontractors] at the Project."  (Docket Entry No. 24-2 at ¶ 4).  The witness explained that Turner had no right to terminate any subcontractor's employees and did not pay those employees. (*Id.*). The witness explained that Turner did not schedule the work of any subcontractor's employees or independent contractors, beyond its general contractor role of coordinating start and stop times on the site.  (*Id.*).

In response, Fuchs argues that Turner was the superintendent for the site and had project managers on site at all times, (Docket Entry No. 28 at 5-6); that all workers had to attend a Turner orientation before beginning work, (*Id.* at 13); and that Turner reviewed the daily tasks of every subcontractor before work could begin. (*Id.* at 18). Turner required contractors and subcontractors to obtain hot-work permits before beginning welding work on the site. (Docket Entry No. 24-2 at ¶ 6).

Because the welder is unidentified, there is no evidence as to the degree of control Turner might have exercised or retained over this particular welder.  The record is both disputed and inadequate to determine the nature and extent of Turner's control over the contractors and other workers on site, including control over the welder holding the torch that burned Fuchs.

### B. Control of the Penthouse Floor

"[A]n owner or occupier has a duty to use reasonable care to keep the premises under his control in a safe condition." *Bastida v. Aznaran*, 444 S.W.3d 98, 106 (Tex. App—Dallas 2014) (citing *Redinger v. Living, Inc*., 689 S.W.2d 415, 417 (Tex.1985)); *See Miranda v. CSC Sugar, LLC*, No. 17-cv-01986, 2018 WL 3302035, at *3 (Tenn. Ct. App. July 5, 2018). Turner argues that it cannot be liable for Fuchs's injuries because it was not an owner or occupier of the penthouse floor where Fuchs was injured and so did not have the requisite control over the premises. (Docket Entry No. 24 at 8). Turner has presented its employee's deposition as evidence that "[t]he penthouse level of the building was not a part of Turner's contract with Amazon[.]" (Docket Entry No. 24-2 at ¶ 7). Fuchs counters that Turner's contract with Amazon covered "tower one," with no carveout for the penthouse floor. (Docket Entry No. 41 at 19–21). Fuchs also asserts that Turner's safety procedures and processes required it to know who was on the job site, what work those individuals or entities were completing, and where they were completing it. (Docket Entry No. 28 at 8).

Amazon's discovery responses show that Turner was the only general contractor authorized to work in the building on the date in question. (*Id.* at 15-16). Given the evidence as to Turner's general control of the building construction site, and the absence of any carveout in Turner's contract with Amazon to exclude the penthouse floor, the court finds that there are factual disputes material to determining whether and to what extent Turner controlled work and personnel on the penthouse floor when Fuchs was injured.

### C. Cause

Tennessee and Texas law require plaintiffs to prove that the defendant's conduct was both (1) the cause-in-fact and (2) the proximate cause of their injuries. *Baldschun v. Action Res*.,  No.

7

1:19-CV-49, 2021 WL 1410033, at *4 (E.D. Tenn. Mar. 16, 2021). To show cause-in-fact in both Texas and Tennessee, the defendant's conduct must be the "but-for" cause of the plaintiff's injury. *Id.* Both states also require that the defendant's conduct be a substantial factor of the plaintiff's injury—in Texas, as an element of cause-in-fact, and in Tennessee, as a component of proximate cause. *Id.*

Turner argues that the evidence fails to show that an electrical arc from a welding torch was either the cause in fact or a substantial factor in causing Fuchs's injuries. (Docket Entry No. 24 at 10). Turner argues that Fuchs's medical records contain no indication that his eye injury was caused by a welding arc flash. Turner argues that Fuchs's blindness was caused, or contributed to by, other pre-existing health conditions, including diabetes. (*Id.* at 8–9). Fuchs responds that the slow-developing nature of his chronic illnesses makes it unlikely that they would cause a sudden blindness. (Docket Entry No. 28 at 20). Turner's argument does not account for the probative nature of the timeline: Fuchs could see well enough to work and perform the activities of daily living until the welding torch arc hit him in the face, and he was unable to do so immediately afterward. (Docket Entry No. 28 at 2–3). The injury alleged is consistent with a welding arc flash or other sudden blinding event, and inconsistent with slow-progressing diabetes. Turner's motion for summary judgment as to causation is denied.

IV.    **Conclusion**

The motion for summary judgment, (Docket Entry No. 24), is denied.

SIGNED on August 6, 2024, at Houston, Texas.

_____
                    Lee H. Rosenthal
                    United States District Judge

8